# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**EARL A. BURKE,**

                              **Petitioner,**

vs.                                                          **Case No. 8:16-cv-2121-T-27TBM**
                                                             **Crim. Case No. 8:15-cr-461-T-27TBM**

**UNITED STATES OF AMERICA,**

                              **Respondent.**

_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 1). In his motion, Petitioner raises two claims of ineffective assistance of counsel:

**Ground One**: PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO
           EFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF COUNSEL'S
           FAILU RE TO MEANINGFULLY CHALLENGE HIS DESIGNATION
           UNDER THE ACCA.

**Ground Two**:
           PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT
           RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL
           AS A RESULT OF COUNSEL'S FAILURE TO FILE AN APPEAL

To prevail on his claims of ineffective assistance of counsel, Petitioner must show that his attorney's performance was deficient and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Petitioner must show that counsel's representation fell below an objectively reasonable standard. *Id.* at 687.

An evidentiary hearing was conducted on March 1, 2017. Based on the testimony and

1

evidence, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is DENIED.

**Procedural history**

Petitioner was charged with possession of a firearm and ammunition by a convicted felon (cr Dkt. 1). The Indictment listed four prior felony convictions.[1] Attorney Charles Britt was appointed under the Criminal Justice Act during Petitioner's first appearance (cr. Dkt. 5).

The case was scheduled for trial on the January 2015 calendar. A change of plea hearing was scheduled for December 30, 2014 before the Magistrate Judge (Dkt. 16). On the day before the hearing, the United States filed its Notice of Maximum Penalty, Elements of Offense, Personalization of Elements, and Factual Basis (Dkt. 17). The Notice expressly stated

> In this case, however, the defendant qualifies as an Armed Career
> Criminal under 18 U.S.C. § 924(e)(1). As an Armed Career Criminal, the
> defendant faces a minimum sentence of imprisonment of fifteen years and a
> maximum sentence of imprisonment of life, a term of supervised release for not
> more than 5 years, a fine of not more than $250,000, and a special assessment
> of $100 due on the change of plea date.

Petitioner pleaded guilty without a plea agreement (Dkt. 18). His PSR classified him as an Armed Career Offender based on four prior convictions (Dkt.24, ¶ 22). There were no objections to

---

[1] The Indictment listed four prior convictions:

Possession of Cocaine with Intent to Sell Manu [sic], in the Circuit Court for the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, in Case No. 06-CF-010914, on or about September 12, 2006;

Burglary of a Dwelling, in the Circuit Court for the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, in Case No. 06-CF- 024160, on or about April 18, 2007;

Grand Theft Third Degree $300, in the Circuit Court for the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, in Case No. 06- CF-024160, on or about April 18, 2007; and

Possession of Cocaine with Intent, in the Circuit Court for the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, in Case No. 13- CF-010406, on or about December 10, 2013.

the validity of those convictions (Dkt. 41 at 4).[2] Petitioner was sentenced to 180 months as an Armed Career Criminal, with supervised release to follow (Dkt. 31). He did not appeal.

**Ground One**

Ground One of Petitioner's motion is without merit. The testimony and record evidence conclusively establishes that Attorney Britt provided effective assistance of counsel to Petitioner, specifically with respect to advising Petitioner about the ACCA and investigating whether his prior convictions were predicate offenses under the ACCA. Even if Petitioner could point to some aspect of Britt's performance which was deficient, which he has not, he cannot demonstrate prejudice.[3]

Petitioner contended in his motion, and testified, that Britt failed to discuss and advise him about the ACCA, failed to inform him that one or two of his prior convictions did not qualify as predicate offenses under the ACCA, failed to challenge his burglary and marijuana possession with intent to sell convictions as a predicate offenses under the ACCA, and failed to explain that he could withdraw his guilty plea because he had been designated as an Armed Career Criminal. That testimony is not credible, if not demonstrably false. And his contention and testimony that he "would have insisted upon a jury trial absent the Government proffering a significantly reduced term of

---

[2] Attorney Britt objected to Petitioner's prior convictions for possession of marijuana with intent to sell within 1,000 feet of a public housing facility, but withdrew that objection after being provided documents by Probation which confirmed that the conviction was a serious drug offense under the Armed Career Criminal Act ("ACCA") (Dkt. 41 at 4).

[3] Ostensibly to support his contention that Britt was ineffective in explaining the ACCA, Petitioner testified that Britt told him that the ACCA guidelines would be reduced in August from 15 years to 10. Of course, Britt testified he never told Petitioner that, and the record supports Britt's account, and likely explains Petitioner's misunderstanding. At sentencing, Petitioner asked if his burglary conviction was still considered a violent felony, and stated that he read that a new guideline which "came in January of 2016" which may be retroactive in August (cr. Dkt. 41 at 6)("It came in January of 2016, but it says it has until August 1st of 2016 to see if it was going to be retroactive or not. I want to know if burglary of a dwelling is considered violent."). Petitioner was apparently referring to Amendment 798 to the career enhancement definition of "crime of violence," in USSG § 4B1.2,effective August 1, 2016. That amendment eliminated burglary from the enumerated offenses in the definition of "crime of violence" of the career offender guideline. That had no effect on the ACCA.

imprisonment" if Britt had informed him that his prior convictions were predicate offenses under the ACCA, is likewise not believable.(Dkt. 1 at 7- 8).

Britt has been a criminal defense attorney for 12 years and has written, in his estimation, 30 federal appellate briefs. He met with Petitioner on ten occasions, nine before he was sentenced, and "likely" six before Petitioner pleaded guilty. As noted, the Indictment listed four prior felony convictions supporting the charge of felon in possession of a firearm (Cr. Dkt. 1). Britt noticed those convictions when he reviewed the Indictment during Petitioner's first appearance. During their first meeting, Britt explained to Petitioner that he would in all likelihood qualify as an Armed Career Criminal based on his convictions, and would face a minimum mandatory sentence of 15 years. According to Britt, the Armed Career Criminal Act ("ACCA") was a "recurring theme" in all of his conversations with Petitioner.

Petitioner's testimony that he was not aware that he would be designated as an Armed Career Criminal until he and Britt reviewed his PSR is not only incredible, but belied by his sworn testimony during his change of plea hearing. Not only had Britt discussed the ACCA with him, on the day before his change of plea, the Government filed its Notice expressly advising that Petitioner qualified as an Armed Career Criminal (cr Dkt. 17), which Britt reviewed with Petitioner. Moreover, the Magistrate Judge reviewed the Notice with Petitioner during his plea colloquy. And the Magistrate Judge expressly advised him that he faced a minimum mandatory penalty of 15 years if he qualified as an Armed Career Criminal. Petitioner acknowledged his understanding of those penalties, but nonetheless pleaded guilty:

> THE COURT: All right. Let me back up. I don't want you to be misled here.
> You have a copy of this notice that I'm looking at there in front of you?

THE DEFENDANT: Yes, sir.

THE COURT: Basically, it sets out two distinct punishments. The first I just told you about. The second paragraph there in the middle of the page essentially advises you that if you qualified as an armed career criminal, then your punishment would be substantially more severe.

If you qualified as an armed career criminal, you would be looking at a mandatory minimum term of 15 years in prison; and, in that case, the maximum is life in prison.

Same fine, 250,000, even with the armed career criminal designation. But you are subject to an enhanced amount of supervised release if you get armed career status. In that case, you can get up to five years of supervised release.

So if you don't qualify for armed career criminal, the maximum is, as I told you, ten years. If you do qualify for armed career criminal, the Court is going to impose a mandatory minimum of 15 and perhaps more if the guidelines call for that.

Do you understand that? That's a significant distinction there. Do you understand both options?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And you indicate you understand the charge. Do you wish to go forward with your plea?

THE DEFENDANT: Yes, sir.

THE COURT: How do you wish to plead?

THE DEFENDANT: Guilty sir.

(Cr. Dkt. 40 at 10-12).

Accordingly, Petitioner's claim is not only belied by the record but any claimed deficiency in Britt's performance was cured by the Government's Notice and the Magistrate's careful plea colloquy. *See United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007) (any failure on the part of counsel to clearly explain the possible punishment was cured by court's plea colloquy).

With respect to Petitioner's contention and testimony that Britt failed to meaningfully

5

challenge his ACCA designation, the record and Britt's testimony, which the court finds to be credible, demonstrate that Petitioner's contention is without merit and his testimony is not credible.

Mindful that the four prior convictions likely classified Petitioner as an Armed Career Criminal and triggered a 15 year minimum mandatory sentence, Britt investigated the four prior convictions. He reviewed pertinent *Shepard* documents and ultimately determined that each of the convictions qualified as predicate offenses under the ACCA. And contrary to Petitioner's testimony, Britt discussed the convictions with him. According to Britt, Petitioner had no issues with his two cocaine convictions, "accepted" his burglary conviction after reviewing the *Shepard*[4] documents, and although he wasn't happy about it, agreed to withdraw the objection to his conviction for marijuana possession with intent to sell within 1,000 feet of a public housing facility at sentencing after reviewing the *Shepard* documents with Britt. The *Shepard* documents produced by Probation confirmed the validity of the conviction as a predicate offense under the ACCA .[5] And the court

---

[4] *Shepard v. United States*, 544 U.S. 13 (2005).

[5] The Government concedes that Petitioner's prior burglary conviction no longer qualifies as a predicate conviction under the ACCA. *See United States v. Esprit*, 841 F.3d 1235, 1237 (11th Cir. 2016)("We hold that a conviction for burglary under Florida law cannot serve as a predicate 'violent felony' under ACCA because the Florida burglary statute is not divisible, and that means that we cannot use the modified categorical approach.").

The primary thrust of Petitioner's claim in Ground One is that Britt failed to challenge his burglary conviction (Dkt. 1 at 8-10). While the law has since changed, when Petitioner was sentenced on March 28, 2016, a Florida burglary conviction could qualify as a violent felony under the ACCA's enumerated offenses clause. *See United States v. Weeks*, 711 F.3d 1255, 1263 (11th Cir.), *cert. denied*, 134 S.Ct. 311 (2013). *Mathis v. United States*, 136 S.Ct. 2243 (2016), on which Petitioner relies, was decided *after* Petitioner was sentenced.

Notwithstanding, after *Descamps v. United States*, 133 S.Ct. 2276,2285 (2013), the modified categorical approach, which includes a review of *Shepard* approved documents, was the methodology for determining whether a prior conviction was for a generic offense. *Weeks*, 711 F.3d at 1260 (district courts may determine the factual nature of prior convictions, including whether they were committed on different occasions, so long as they limit themselves to *Shepard*-approved sources). And that is the methodology Britt referenced in explaining his analysis of whether Petitioner's prior convictions were predicate offenses under the ACCA.

Even if Britt was in some way deficient in not challenging the burglary conviction, Petitioner was not prejudiced because he had three prior convictions for serious drug offenses (Cr Dkt. 24, PSR at ¶ 22). *United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014) (violation of Fla. Stat. § 893.13(1) constitutes a serious drug offense under the ACCA), *cert. denied*, 135 S.Ct. 2827 (2015); Fla. Stat. § 775.082(3)(d) (second degree felony punishable by term of imprisonment not to exceed 15 years).

independently determined that the conviction "qualifies as a predicate offense for the enhancement." (Id.). See Fla. Stat. § 893 (f) 2.)(felony of the second degree, punishable as provided in § 775.082(3)(d) (second degree felony punishable by term of imprisonment not to exceed 15 years). The transcript of the sentencing hearing bears all of this out (Cr. Dkt. 41 at 4).

The record and evidence demonstrate that Ground One has no merit. Petitioner has not demonstrated that Attorney Britt's performance was deficient, or that he suffered prejudice from any claimed deficient performance.

**Ground Two**

In Ground Two, Petitioner claims that he asked Britt to file an appeal but Britt failed to do so (Dkt. 1 at 14). Britt's credible testimony is to the contrary, and I therefore find that Petitioner never asked Britt to file an appeal.

A lawyer who fails to comply with instructions from his client to appeal has acted "in a manner that is professionally unreasonable," and prejudice is presumed  *Gomez-Diaz v. United States*, 433 F.3d 788, 790 (11th Cir. 2005), citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "In the absence of specific instructions, an attorney nonetheless has a constitutional duty to consult with his client about an appeal, when (1) a rational convicted defendant would want to appeal, or (2) the convicted defendant reasonably demonstrated to counsel an interest in appealing." *Id.* at 480.

Consistent with *Gomez-Diaz*, the evidentiary hearing focused on Petitioner's claim that he was denied effective assistance of counsel because Britt did not file a notice of appeal after being requested to do so. According to Britt, he had several conversations with Petitioner about his appellate rights during the course of his representation, including when Petitioner was preparing to enter his open guilty plea. And immediately after sentence was imposed and court had adjourned,

7

he again discussed the right to appeal with Petitioner. He explained the time for filing an appeal and told Petitioner if he wanted to appeal, he would file one and request to be appointed. Britt explained to Petitioner, however, that he did not feel there was a basis for an appeal because there were no objections at sentencing or pretrial rulings to appeal. Notwithstanding, he offered to file the appeal if Petitioner wanted him to do so, and told Petitioner to let him know. According to Britt, Petitioner did not say one way or the other whether he wanted to appeal, and Britt never heard from Petitioner thereafter.[6]

Based on the evidence, I find and conclude that Petitioner was not denied the effective assistance of counsel. Specifically, his testimony that he requested Britt file an appeal is <u>not</u> credible.[7] While the testimony conflicts about whether, as Petitioner testified, he asked Britt to appeal, and Britt's testimony that Petitioner didn't say, one way or the other, whether he wanted to appeal, as noted, Petitioner's testimony that he asked Britt to appeal is not credible. That resolves the conflict.

Where, as here, the client has not specifically requested his attorney to appeal, the inquiry is "whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes."*Gomez-Diaz*,433 F.3d at

---

[6] Britt's testimony is credible. Petitioner's testimony that he asked Britt to appeal and tried to reach him on the phone but that his collect calls were not accepted by Britt's office is not credible. Significantly, this was the first time he has made that contention, having failed to include it in his § 2255 motion (*see* Dkt. 1 at 13- 15).Moreover, Britt explained his office's procedure when a client called collect from jail. If he was in the office, he immediately took the call. If he was not in, his staff was to take the call, make a note of the call, and he would return it when he returned. Considering Britt's background and experience as a criminal defense attorney, and that he has filed federal appeals in approximately 30 cases, it is simply not believable that Britt would ignore a collect call from jail from an existing client.

[7] Petitioner's testimony is obviously self serving, and he is in a difficult situation. He has several felony convictions and is serving a minimum mandatory 15 year sentence, and by his own admission, would do anything to get out of prison. Judging his demeanor, he is a reasonably intelligent and well spoken individual, as implied by my observations during sentencing (cr. Dkt. 41 at 7)("You know what? That tells me something about you. That wasn't necessarily apparent in the presentence report. You are starting to ask questions. You are starting to try to figure things out, and that's a good thing. Even though sometimes the answers to the questions are disappointing, it tells me there is something inside of you saying I've got to get myself out of this mess.
THE DEFENDANT: Yes, sir.
THE COURT: That's a good thing. I will give you a compliment on that.

792; *Flores-Ortega*,  528 U.S. at 478 ("consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes"). Britt did that. Accordingly, he acted unreasonably only if he ignored Petitioner's wishes to appeal the case. *Id.*

This is not a case where the attorney failed to consult with his client about the client's appellate rights. Here, it is undisputed that Britt consulted with Petitioner about the advantages and disadvantages of an appeal and made a reasonable effort to determine whether Petitioner wanted to appeal. Petitioner acknowledged in his testimony that Britt discussed his right to appeal his ACCA designation before he was sentenced. And he acknowledged that after he was sentenced, he and Britt discussed his right to appeal and Britt told him there were no grounds for an appeal. It is therefore apparent that Petitioner understood Britt's opinion that there was no basis for an appeal, and said nothing to suggest or indicate that he wanted to appeal notwithstanding Britt's assessment. *See Devine v. United States*, 520 F.3d 1286, 1289 (11th Cir. 2008) (where defendant understands attorney's opinion that appeal would be futile and says nothing to suggest that he was interested in appealing anyway, finding that defendant did not reasonably demonstrate to attorney that he was interested in appealing not erroneous); *See Gaston v. United States*, 318 F. App'x 750, 752 (11th Cir. 2008) (same).

Britt fulfilled his duty to consult with Petitioner about an appeal when he explained the advantages and disadvantages of appealing, advised that there was no basis on which to appeal, and made a reasonable effort to determine Petitioner's wishes. *Medina v. United States*, 167 Fed. Appx. 128, 134-35 (11th Cir. 2006)(where client neither instructs attorney to appeal nor asks that an appeal not be taken, relevant question in determining whether attorney performed deficiently by not filing NOA is "whether counsel in fact consulted with the defendant about an appeal").

During final argument, Petitioner's counsel argued that Britt did not have a "meaningful" consultation with Petitioner about his right to appeal, suggesting, without any evidentiary support,

that Britt's post-sentencing consultation with Petitioner could only have lasted a few minutes, since it took place in the courtroom. "The question of what constitutes adequate consultation, however, is not one of duration, but of content." *Thompson v. United States,* 504 F.3d 1203, 1207 (11th Cir. 2007).

A perspective of Petitioner's plight is important in evaluating whether he and Britt had a "meaningful" consultation about an appeal after he was sentenced, and whether Britt's consultation with him fulfilled his constitutional duty. Granted, as counsel argues, Petitioner had nothing to lose by appealing. But he had pleaded guilty, knowing that he would be sentenced as an Armed Career Criminal. His guilty plea reduced the "scope of potentially appealable issues" and essentially indicated that he sought "an end to judicial proceedings." *Flores–Ortega*, 528 U.S. at 480; *See Fields v. United States*, 577 F. App'x 916, 919 (11th Cir. 2014). And he understood that his sentence was mandated by statute.[8]

In fact, in the context of whether an attorney has a duty to consult with his client about an appeal, the relevant factors considered in determining whether a rationale defendant would want to appeal would not support a duty to consult in this case, even though Britt clearly consulted with Petitioner about the appeal. *See Fields v. United States*, 577 F. App'x 916, 919-20 (11th Cir.) (where defendant pleaded guilty, received the sentence he had bargained for, and although there were nonfrivolous issues he could have raised on appeal, "no rational convicted defendant would have wanted to appeal in these circumstances"), *cert. denied*, 135 S.Ct. 1878 (2015); *Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008) (rational defendant would not want to appeal because there were no nonfrivolous grounds for appeal, he pled guilty, there was no suggestion that the plea was invalid, and he received a legal sentence at the bottom of the guidelines).

---

[8] As Britt acknowledged at sentencing: "Thank you, your Honor. Unfortunately, I'm in a position I don't have a lot to work with; and until, or if, Congress ever changes this law, we are stuck with the 15-year minimum mandatory at this point, 180 months, and we are asking the Court to impose 180 months" (Cr. Dkt. 41 at 5-6).

Further, there were no nonfrivolous grounds for an appeal, as Britt explained to him.[9] As noted, Petitioner's prior convictions, for ACCA purposes, had been a "recurring theme" in all of the conversations between Britt and Petitioner. Each of those convictions were ultimately determined to be predicate offenses under the ACCA. Britt discussed Petitioner's appellate rights with him before sentencing, and nothing changed at sentencing. Even if the post-sentencing consultation was brief, there was not much to discuss. As Britt explained to Petitioner, there were no pretrial rulings to appeal, and no objections were made at sentencing. As Petitioner testified, Britt advised him to remain in contact with the Detective "to help yourself out," obviously a reference to earning a Rule 35(b) motion from the Government in order to obtain a sentence reduction for substantial assistance, which he had not been able to earn before sentencing.[10]

Finally, given the several consultations between Britt and Petitioner about the ACCA and his right to appeal, it was not necessary that Britt initiate any further contact with Petitioner after he was sentenced, as suggested during argument, absent some indication from Petitioner that he was considering an appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 479-80 (2000) (rejecting brightline rule that counsel must always consult with defendant regarding appeal). I find, therefore, that Petitioner never indicated to Britt that he desired to appeal. The *per se* duty to appeal outlined in *Flores-Ortega* was not, therefore, triggered. Attorney Britt's conduct cannot be considered "professionally unreasonable." *Strickland v. Washington*, 466 U.S. 668, 691 (1969). Ground Two

[9] While Petitioner himself inquired as to whether his burglary conviction constituted a violent felony, suggesting in hindsight a nonfrivolous issue, the only issue in his case when he was sentenced was whether he was correctly designated as an Armed Career Criminal under the ACCA. As has been discussed, even setting aside his burglary conviction, Petitioner's three serious drug offense convictions were predicate offenses under the ACCA.

[10] As the prosecutor explained at sentencing: I know he gave one proffer that didn't quite work out and tried to reach out to another law enforcement officer to see if he could do something with Mr. Burke's information. I don't think that quite worked out. And I know Mr. Britt now is, on his own, reaching out to some other law enforcement officers because I know his client has some things to say. I think that speaks well of Mr. Burke. And although there is no 5K that I can give, certainly not at this time, his willingness to cooperate is something that I think is worthy of lobbying (Cr. Dkt. 41 at 9).

is therefore denied.

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is DENIED. All pending motions are denied as moot. The clerk is directed to enter judgment against Petitioner and close this case.

### Certificate of Appealability ("COA")

Petitioner is not entitled to a COA. He has no absolute entitlement to appeal the denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make that showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Drake*, 542 U.S. 274, 282 (2004)(*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)(quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing. And because he is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** this ___7th___ day of March, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Petitioner, counsel of Record